BRINLEY v. NEVINS. (No. 5822.)

(Supreme Court, Appellate Division, First Department. May 29, 1914.)

1. CORPORATIONS (§ 116*)—SALE OF STOCK—OPTIONS—CONSIDERATION—ACCEPTANCE BEFORE WITHDRAWAL.
   That there was no consideration for an option to purchase stock did not render it unenforceable where it was accepted by an offer to purchase the stock before the seller attempted to withdraw it.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 493, 494, 496; Dec. Dig. § 116.*]

2. CORPORATIONS (§ 121*)—SALE OF STOCK—REVOCATION OF OFFER—SUFFICIENCY OF EVIDENCE.
   Where one who had given an option to purchase stock, upon being told by the holder of the option that he was ready to take the stock, advised him to go ahead and finance the proposition, in pursuance of which advice the option holder did make the necessary arrangements, unequivocal and satisfactory proof was required to support a holding as a matter of law that the option had been revoked before its acceptance.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 504, 505; Dec. Dig. § 121.*]

3. CORPORATIONS (§ 118*)—SALE OF STOCK—TENDER OF PRICE—NECESSITY—EXCUSES—REFUSAL TO PERFORM.
   Where the holder of an option to purchase stock gave notice that he was ready to take up the stock, whereupon the seller absolutely refused to deliver it, an actual tender of the purchase price would have been a mere matter of form, and was not required.

   [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 497, 498; Dec. Dig. § 118.*]

   Ingraham, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Edward Brinley against Thomas A. Nevins. From a judgment dismissing the complaint at the close of plaintiff's case, and from an order denying a new trial, plaintiff appeals. Reversed, and new trial ordered.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Herbert C. Smyth, of New York City, for appellant.

Abraham Benedict, of New York City, for respondent.

McLAUGHLIN, J.　Action to recover damages for breach of a contract to sell 50,000 shares of stock. The complaint was dismissed at the close of plaintiff's case, and from a judgment to that effect and an order denying a motion for a new trial, plaintiff appeals.

The evidence introduced by the plaintiff would have justified the jury in finding the following facts: That on the 17th of September, 1908, the defendant wrote plaintiff:

"The option given to you and Mr. Swift jointly has expired on September 13th. We will, therefore, extend the option to you individually, namely, for 50,000 shares Central at 38 for 30 days from date hereof. We have certain plans now under way with regard to the market that will, undoubtedly, help you to quickly place this block of stock inside of the next few weeks. We would recommend that you remain in Boston working up the situation, as now is the time in our mind to strike the iron."

That on October 12th plaintiff called at defendant's office, and after discussing another transaction with his authorized agent, one Eakins, referred to the option for the 50,000 shares, contained in the letter quoted, and said he wanted to take up the stock and pay for it. That Eakins, in response to plaintiff's request, said no letter had been written giving plaintiff an option, to which he replied that he would get the letter and return, which he did on October 14th. That Eakins, after seeing the letter, said he did not deny the genuineness of its signature. That plaintiff then repeated the statement which he had previously made that he was ready to take up the stock and pay for it. That, after some talk to the effect that defendant would rather stand a lawsuit than deliver the stock and have it dumped upon the market, he finally told plaintiff to go ahead and assented to plaintiff's proposition to come within a day or two and make the necessary payment. That the plaintiff then arranged with Daniel Odell. & Co., a responsible firm of stockbrokers, to take up the stock and pay for it, either by cash or certified check, as defendant might prefer. That plaintiff, having made this arrangement, telephoned Eakins he would be ready to complete the transaction on October 16th, and Eakins appointed 10:30 as the time when he could call at defendant's office. That at the time appointed plaintiff appeared and told Eakins he had come to take up the stock and was ready to pay for it. That Eakins refused to deliver the certificates to the plaintiff and made an appointment for 2 o'clock in the afternoon, at which time defendant himself was to be present. That at that hour plaintiff returned with the witness Swift and stated that he had come to pay for the stock and would give a certified check or cash, as defendant might prefer. And that defendant refused to deliver the stock.

[1, 2] The judgment is sought to be sustained on the ground that there was no consideration for the option, for which reason defendant had the right to withdraw it at any time before acceptance. This may

be conceded, but the evidence would have justified the jury in finding that there was an acceptance before the defendant attempted to 'withdraw. On October 12th defendant advised plaintiff to go ahead and finance the proposition, and in pursuance of such advice the plaintiff did make the necessary arrangements. Under such circumstances, proof of the revocation should have been unequivocal and satisfactory before the court could hold as matter of law that the revocation had been established. Quick v. Wheeler, 78 N. Y. 300; Pettibone v. Moore, 75 Hun, 461, 27 N. Y. Supp. 455. Such revocation was not given until the afternoon of October 16th. Plaintiff testified that in the presence of Swift he stated to the defendant he had "come to get the 50,000 shares of stock and pay for it," and defendant said he would not deliver the stock; that Swift said he could have "a certified check or anything else," and defendant "simply refused to deliver the stock." As to what took place at the interview last referred to, plaintiff was corroborated by Swift.

[3] The respondent contends that all the plaintiff did was to give notice that he was ready to perform on his part, and, inasmuch as he did not actually make a legal tender, defendant was not bound to deliver the stock. This undoubtedly would be so except for the fact that the defendant absolutely refused to deliver it. Having refused, an actual tender would have been a mere matter of form, and the law does not require one to go through an idle ceremony of that kind.

The authorities cited by the respondent are not in conflict with this view. In Page v. Shainwald, 169 N. Y. 246, 62 N. E. 356, 57 L. R. A. 173, plaintiff did not make his demand and tender until after the option had expired. In Kerr v. Purdy, 51 N. Y. 629, plaintiff was not able to make good his demand by payment of the necessary sum. In Pomeroy v. Newell, 117 App. Div. 800, 102 N. Y. Supp. 1098, plaintiff had merely cabled an assent to the offer of option and had never agreed to purchase. In Harle v. Brennig, 131 App. Div. 742, 116 N. Y. Supp. 51, plaintiff had never offered to pay until the action was brought. In the case at bar, plaintiff was ready, able, and willing to make a tender at the time of the acceptance.

If these views be correct, then the failure to actually tender is immaterial, for defendant's repudiation made that unnecessary. This rule is tersely stated in Currie v. White, 45 N. Y. 822, by Rapallo, J., who said:

"A tender of the money was not necessary; the payment and delivery were to be simultaneous. The offer and readiness to pay were sufficient, and by failing to respond to that offer the defendant dispensed with the necessity of a formal tender. The plaintiff showed that he was ready to pay, having made an arrangement with his bank to certify his check for the required amount on that day. * * * If the defendant had said that he would deliver the stock on payment of the money, then it would have been necessary to tender it; but, instead of that, he said he would go and consult his lawyer, and he went away, taking the stock with him, and did not return or send any answer. This constituted a refusal to perform."

See, also, Stokes v. Mackay, 147 N. Y. 223, 41 N. E. 496; Baumann v. Pinckney, 118 N. Y. 604, 23 N. E. 916; Shaw v. Republic Life Ins. Co., 69 N. Y. 286.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to appellant to abide event.

LAUGHLIN, DOWLING, and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (dissenting). I think that this so-called option was absolutely unenforceable as not based upon any consideration, and the so-called acceptance of the option could not form a consideration for any promise by the defendant. The option is contained in two letters, one by the plaintiff to the defendant, dated September 16, 1908, in which the plaintiff says:

"Under the circumstances, when the agreement with Swift runs out, I would like to have it given to me, individually, for thirty days. I am of the opinion that I can place the entire amount; and I will probably take a good proportion myself for investment."

In reply to that, on September 17, 1908, the defendant wrote as follows:

"The option given to you and Mr. Swift jointly has expired on September 13th. We will therefore extend the option to you individually, namely, for fifty thousand shares Central at thirty-eight for thirty days from date hereof."

This was purely a unilateral agreement. There was no obligation of the plaintiff to do anything. No offer to sell the stock to the plaintiff. No agreement to sell at any time. Defendant said that they extended the option to plaintiff individually for 50,000 shares of Central at 38 for 30 days from date hereof. When plaintiff at the end of the 30 days went to the defendant to accept the option, the defendant repudiated it and refused to comply with it. There certainly was no completed contract by the plaintiff simply saying, "I accept the option," if there was no mutual promise then binding on anybody. The option was still without a consideration and still unilateral, and the defendant refused to enter into any contract.

In Quick v. Wheeler, 78 N. Y. 300, the defendant wrote to the plaintiff as follows:

"And I, said Wheeler, also agree to pay said Quick four and a half cents per foot for from six to fifteen thousand feet of same kind and quality of tie timber as aforesaid, and delivered at the place aforesaid during the winter, to be paid on the first day of June, 1874."

This contract was signed by both parties, but there was no agreement on the part of the plaintiff to deliver this last quantity. That contract the court held to be a written offer which could be revoked at any time before performance or a binding acceptance by the plaintiff. The evidence was that it was performed by the plaintiff. It was accepted in performance, and the court held there was not sufficient evidence of revocation. But here was a binding offer to purchase. In the case at bar there was no binding offer to do anything. A simple option was given which it seems to me was unenforceable for lack of a consideration.

I think the defendant was also entirely within his rights in insisting that the plaintiff must make a legal tender if he wished to bind the defendant, and, having failed to make a legal tender, there was no binding acceptance of the offer within the authorities.

I think therefore the judgment was right and should be affirmed.